IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM ALSTON, #A0170588, | ) ) ) | CIV. NO. 11-00062 HG-BMK |
| Petitioner, | ) ) ) | ORDER DISMISSING PETITION AS TIME-BARRED AND DENYING |
| vs. | ) ) | CERTIFICATE OF APPEALABILITY |
| TODD THOMAS, | ) ) | |
| Respondent. | ) ) | |

**ORDER DISMISSING AMENDED PETITION AS TIME-BARRED
AND DENYING CERTIFICATE OF APPEALABILITY**

Before the court is William Alston's petition for a writ of habeas corpus under 28 U.S.C. § 2254. Alston is proceeding *pro se*. Respondent has filed a preliminary Answer to the Petition. ECF #10. Alston has filed a Reply. ECF #15. Both parties have filed court-ordered supplemental briefs, ECF #19, #20, & #22, and Alston filed a rebuttal to Respondent's supplemental brief, ECF #23. Because the Petition is time-barred and Petitioner is not entitled to equitable or statutory tolling, it is DISMISSED with prejudice pursuant to 28 U.S.C. § 2244(d)(1), and a Certificate of Appealability is DENIED.

**I. BACKGROUND**

On September 15, 2006, Alston was convicted by jury trial in the Circuit Court of the First Circuit, State of Hawaii ("circuit court"), of attempted murder in the second degree (Count 1); kidnapping (Counts 2, 4, 6, and 11); terroristic

threatening in the first degree (Count 5); and abuse of a family or household member (Count 13). ECF #10-3, App. B. Judgment of conviction and sentence was entered on January 24, 2007. *Id.*

On February 13, 2007, the circuit court denied the State's motions for extended and consecutive terms of imprisonment, but granted the State's motions for imposition of mandatory minimum terms of imprisonment for offenses against the elderly and as a repeat offender. ECF #10-4, App. C. The circuit court issued an amended judgment on March 7, 2007. *See* ECF #10-5, App. D at 9.

The Hawaii Intermediate Court of Appeals ("ICA") affirmed Alston's sentence and conviction on March 31, 2009, in No. 28410. ECF #10-8, App. G. Judgment on Appeal was entered on April 27, 2009. ECF #10-9, App. H. The Hawaii Supreme Court rejected Alston's application for *certiorari* on August 27, 2009. Doc. #10-11, App. J. Alston did not seek *certiorari* with the United States Supreme Court, nor has he pursued post-conviction relief in the state courts.

On January 17, 2011, Alston signed his "Motion to File Late 2254 Petition," and mailed it to this court the next day. The court received and filed the Motion on January 24, 2011. ECF #1. In the Motion, Alston stated that he was in administrative segregation, was not allowed help from other inmates, had been subject to several prison lockdowns, and was unschooled in "legal

procedures, protocol, and administration on how to file petitions, and motions [which] caused me to find out recently of my tardiness to file a Federal Habeas Corpus Petition." ECF #1 at 1. The court granted the Motion and notified Alston that, although it initiated an action based on his request, it made no determination whether the forthcoming petition would be timely pursuant to 28 U.S.C. § 2244. ECF #3. On February 18, 2011, Alston signed the Petition and Memorandum in Support. *See* ECF #7 & #8. These documents were mailed from Arizona on February 23, 2011, and received and filed on February 24, 2011.

Alston raises four grounds for relief: (1) prosecutorial misconduct (Ground One); (2) denial of the right to counsel (Ground Two); (3) denial of the right to confront witnesses (Ground Three); and (4) trial court error in admitting prejudicial statements at trial (Ground Four).

## II. <u>LEGAL STANDARD</u>

On April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") altered the time limit imposed on state prisoners filing habeas corpus petitions in federal court. AEDPA established a one-year period in which to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such by State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The statute of limitation is also tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting statutory tolling under 2244(d)(2) to state, not federal petitions).

### III. DISCUSSION

Alston's conviction was final on November 25, 2009, ninety days after the Hawaii Supreme Court rejected his petition for *certiorari* and the time for seeking *certiorari* with the United States Supreme court expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003). The statute of limitation began to run on November 26, 2009, and barring statutory or equitable tolling, expired on November 25, 2010. Alston filed the Petition eighty-five days later, on February 18, 2011, the date that he signed it

and gave it to prison officials for mailing.[1]

**A.   The Parties' Arguments**

Alston argues that prison lockdowns during February, June, and July 2010, constitute a State-created impediment to timely filing of the Petition and entitle him to "approximately 150 days" of equitable tolling.  *See* ECF #15, Reply; *see also* ECF #20, Pet'r Supp'l Br.  Alston claims that during these lockdowns he was unable to attend the law library, purchase stamps and paper, or attend education programs, impairing his ability to research his claims.  Alston provides his own declaration as well as declarations from inmates Greg Schoenlein and Edmund Abordo in support of his claims.  *See* ECF #15-1 Alston Dec.; ECF #15-2, Abordo Dec. ECF #20-5, Schoenlein Dec.

Alston also complains that, although the prison's library contains United States Supreme Court and Ninth Circuit caselaw, it does not have other circuit caselaw that may be cited in the available cases.  He further complains that there are no trained paralegals to assist him and that inmates are not allowed to assist each other.  Alston states that he has been diligently pursuing his rights, but these impediments to filing were beyond his control and impaired his ability to timely file the Petition.

---

[1] *See Houston v. Lack*, 487 U.S. 266, 268 (1988) (finding that a *pro se* prisoner's notice of appeal is deemed filed when the prisoner delivers it to prison authorities for forwarding to the Clerk of the Court); *Jenkins v. Johnson*, 330 F.3d 1146, 1149 n.2 (9th Cir. 2003).

Respondent confirms that the prison was on lockdown from February 16 to March 16, 2010 (28 days), June 8 to "late June, 2010" (at least 22 days), and from July 27 to "early September 2010" (at least 49 days), totaling 99 days.[2] Respondent argues, however, that during lockdowns inmates, including indigent inmates, are able to obtain paper, pens, envelopes, postage, and photocopies of legal documents upon request. *See* ECF #22-1, Ex. A, Thomas Aff. ¶¶ 7-10 Respondent also attests that, although segregated inmates like Alston are restricted from physically attending the law library during lockdowns,[3] they may still obtain caselaw and legal research materials from the law library by written request.

Respondent points out that, at the conclusion of Alston's direct appeal in 2009, his attorney notified him of (1) the due date to file a writ of *certiorari* with the United States Supreme Court, (2) the AEDPA statute of limitation for his

---

[2] Alston complains that Respondent failed to comply with the court's September 21, 2011 order directing supplemental briefing. See ECF #21, EO; *see also* ECF #23, Pet'r Rebuttal. The court agrees, and therefore considers "late June, 2010," to mean until June 30, 2010, and "early September 2010," to mean until at least September 14, 2010. *Had* Respondent been more exact, it is possible the Petition is time-barred even if tolled during the lockdowns.

[3] Alston states that he was not in segregation during the 2010 lockdowns. ECF #23, Pet'r Rebuttal. This suggests that his confinement was less restrictive during the lockdowns, rather than more so, and does not alter the court's conclusion that the Petition is time-barred.

6

claims, specifically notifying Alston that he had one year from November 25, 2009, within which to file a federal habeas petition; and (3) the possibility of filing a post-conviction petition under Rule 40 of the Hawaii Rules of Penal Procedure ("HRPP"), that would toll the federal statute of limitation.[4] *See* ECF #20-1, Ex. A, Kagiwada Letter. Respondent further notes that Alston's Petition contains no legal analysis but simply repeats the issues and arguments set forth in Alston's direct appeal, obviating Alston's argument that lack of attendance at the law library impaired his ability to file the Petition. *See* ECF #10, Resp.'s Preliminary Answer, Ex. D.

**B.  Equitable Tolling**

"[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Lawrence v. Florida*, 549 U.S. 327, 328 (2007) (assuming without deciding that equitable tolling applies to § 2244(d)). The "purpose of equitable tolling 'is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008). Equitable tolling

---

[4] Alston submitted his attorney's letter in support of his Supplemental Brief.

of the AEDPA statute of limitation, however, is unavailable in most cases. *See Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002); *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). Moreover, a habeas petitioner seeking equitable tolling must show that the extraordinary circumstances alleged were the "but for" and proximate cause of the untimely filing of his federal petition. *Bryant v. Ariz. Atty. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007); *Allen v. Lewis*, 255 F.3d 798, 800-01 (9th Cir. 2001).

Alston seeks equitable tolling based on the 2010 lockdowns and the conditions imposed during those lockdowns. Lockdowns, however, and the resulting restricted access to a prison law library are not, by themselves, extraordinary circumstances. *See Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009). In *Ramirez*, the court noted that:

> [o]rdinary prison limitations on Ramirez's access to the law library and copier (quite unlike the denial altogether of access to his personal legal papers) were neither "extraordinary" nor made it "impossible" for him to file his petition in a timely manner. Given even the most common day-to-day security restrictions in prison, concluding otherwise would permit the exception to swallow the rule-according to Ramirez's theory, AEDPA's limitations period would be tolled for the duration of any and every prisoner's stay in administrative segregation, and likely under a far broader range of circumstances as well.

*Ramirez*, 571 F.3d at 998; *see also*, *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2002) (lack of access to library materials does not automatically qualify as grounds for equitable tolling); *United States v. Van Poyck*, 980 F. Supp. 1108, 1111 (C.D. Cal.

8

1997) (absent evidence of petitioner's diligence, lockdowns at prison allegedly eliminating access to law library were not extraordinary circumstances warranting equitable tolling); *Rosati v. Kernan*, 417 F. Supp.2d 1128, 1132 (C.D. Cal. 2006) ("[C]omplaints about limited access to the law library and legal materials at various state prisons and occasional prison lockdowns do not warrant equitable tolling since petitioner has not shown any causal connection between these events and his failure to timely file his habeas corpus petition."); *see also Corrigan v. Barbery*, 371 F. Supp.2d 325, 330 (W.D.N.Y. 2005) ("In general, the difficulties attendant on prison life such as transfers between facilities, solitary confinement, lockdowns, restricted access to the law library, and an inability to secure court documents, do not by themselves qualify as extraordinary circumstances.").

Alston fails to establish that he acted diligently or that he encountered extraordinary circumstances that prevented him from filing his federal petition in a timely fashion. First, notwithstanding Alston's statement that he just "recently [discovered his] tardiness" in January 2011, ECF #1, Alston's attorney clearly informed him of the relevant date for filing a federal habeas petition at the conclusion of his direct appeal in 2009. *See* ECF #20-1, Ex. A, Kagiwada Letter, dated September 4, 2009 ("Although there is no time deadline for filing the Rule 40

petition, you only have a year from November 25, 2009 to file a federal habeas petition"). This letter also belies Alston's statement that his Petition is late because he was "forced to deviate from pursuing Rule 40 Petition, due to a combination of facility lock-downs, and the time limitation period coming to a close." *Id.*, ECF #20-1 at 3. Alston has known since 2009 that there were time limits on filing a federal habeas petition, and that those time limits are tolled while he pursued State post-conviction relief. Alston does not explain what he was doing since 2009, during the time that the prison was *not* on lockdown, to diligently comply with the deadline of which he was clearly aware.

Second, although Alston was not able to physically attend the prison's law library during the 2010 lockdowns, he was able to request legal materials, case law, reference materials, etc., at any time. *See* ECF #22-1, Thomas Aff. ¶¶ 6-13, 17. Alston carefully states that he was denied "access" to the prison's law library, but refrains from saying that he had no ability to retrieve the unidentified legal materials he claims that he required. Alston admits that he was familiar with the available reference materials in the prison's law library because he complains that it "only" contains Supreme Court and Ninth

Circuit case law.[5]  *See* ECF #15-3, Reply Ex. C.  Alston also claims that he was in the "process of learning how to research and file a [§ 2254] Petition within the one year period," when he discontinued pursuing state post-conviction relief because of the facility lockdowns.  ECF #20 at 2.  This indicates that Alston attended the law library before and after the 2010 lockdowns, was familiar with its contents, and with minimum diligence could have requested appropriate, relevant legal materials during the lockdowns at issue, or taken some other action to mitigate the effect of the lockdowns.

Third, this Court takes judicial notice of its filings from *pro se* prisoners incarcerated at the Saguaro Correctional Facility ("SCF") during the time that Alston claims he was unable to file the Petition.[6]  Looking only at the period between February 16, 2010, the date of the first lockdown, until November

---

[5] If Alston also claims equitable or statutory tolling on this basis, he is incorrect. The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362 at 412 (2000); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003). Circuit law may be "persuasive authority," but only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id.*  Alston did not require circuit case law, particularly from circuits outside of the Ninth.

[6] A court may take judicial notice of the existence of matters of public record, such as a prior order, decision, or its own records, but not the truth of the facts cited therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-690 (9th Cir. 2001)

25, 2010, the date that the statute of limitation expired here, seven SCF inmates proceeding *pro se* and *in forma pauperis* commenced eight actions in this court.[7]  If these *pro se,* indigent inmates were able to initiate actions and file documents with this court during the relevant time period, even during the lockdowns, Alston's claim that he was unable to do the same is not credible.  Alston provides nothing showing that he requested and was denied law library legal materials, writing supplies, or postage, other than a statement and document showing that requests he may have made to *attend* the law library during the days at issue are no longer available in the prison's records. *See* ECF #20-2 1-3, #20-3.

Particularly damaging to Alston's claims is inmate Greg Schoenlein's declaration in support of Alston's supplemental brief.  *See* ECF #20-5, Schoenlein Dec.  Schoenlein claims that

---

[7] *See Whitby v. Thomas*, 1:10-cv-00287 HG (habeas petition filed 5/14/2010, Pet'r Traverse filed 7/19/2010); *Griffin v. Espina*, 1:10-cv-00420 BMK (civil rights action filed 7/22/2010, five documents filed during lockdown: ECF #9, #11, #14-#16); *Grindling v. Thomas*, 1:10-cv-00429 KSC (habeas petition filed 7/26/2010); *Karagianes v. Thomas*, 1:10-cv-00430 BMK (habeas petition filed 07/23/2010, four documents filed during lockdown: ECF #6, #10, #12, #13); *Rapozo v. Bennett*, 1:10-cv-00455 DAE (habeas petition filed 08/05/2010, ten documents filed during lockdown: ECF #1, #5, #7, #8, #10, #12, #13, #15, #16, #17); *Rapozo v. Lingle*, 1:10-cv-00493 JMS (civil rights action filed 08/23/2010, five documents filed during lockdown: ECF #1, #2, #5, #6, #12); *Tew v. Thomas*, 1:10-cv-00511 LEK (habeas petition filed 09/02/2010, three documents filed during lockdown: ECF #1, #4, #5); *Fagaragan v. Thomas*, 1:10-cv-00591 DAE (habeas petition filed 10/08/2010).

during the June and July-September 2010 lockdowns he "attempted to mail 7 separate "LEGAL" mailings to the Hawaii Circuit Court [that] were denied postage and exit from [SCF]." *Id.* State court records reveal, however, that Schoenlein had only one case pending during this period, *Schoenlein v. Hawaii*, 1PR10-1-000028, a Rule 40 post-conviction petition, in which he timely filed a response to the State's Answer on August 17, 2010, during the July-September 2010 lockdown. *See* Hawai'i State Judiciary, http://hoohiki1.courts.state.hi.us/jud/Hoohiki/. This shows that Schoenlein was able to send and file relevant documents during the lockdown and casts doubt on his declaration.

Finally, Alston does not explain why he waited four months after the final lockdown in July-September 2010, to contact this court about the difficulties he was allegedly having filing a habeas petition, and a full month thereafter before he actually filed his Petition.

Alston fails to show that the 2010 lockdowns constituted extraordinary circumstances that prevented him from timely filing his federal petition or that he exercised due diligence in filing his Petition. Nor can he show that the lockdowns were the "but-for" cause of his untimely filing. Alston is not entitled to equitable tolling of the statute of limitation.

**C.   No Tolling Under 28 U.S.C. § 2244(d)(1)(B)**

Alston seeks a different date for commencement of the limitation period under § 2244(d)(1)(B), arguing that the lockdowns limited his access to the prison law library, and therefore allegedly denied him access to the court, constituting a State created impediment to timely filing the Petition. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).

AEDPA provides that if "the applicant was prevented from filing" a federal habeas petition by an "impediment . . . created by State action in violation of the Constitution or laws of the United States," the limitation period commences on "the date on which the impediment to filing . . . is removed." 28 U.S.C. § 2244(d)(1)(B). The standard under § 2244(d)(1)(B), however, is much more stringent than that for equitable tolling. *See Ramirez*, 571 F.3d at 1000-01. While a petitioner may be entitled to equitable tolling in certain circumstances as discussed above, he or she is "entitled to the commencement of a new limitations period under § 2244(d)(1)(B) only if [the alleged impediments to filing] altogether prevented him from presenting his claims in *any* form, to *any* court." *Id.* at 1001 (emphasis in original) (citing *Lewis*, 518 U.S. at 350-51); *see also Lloyd v. Van Natta*, 296 F.3d 630, 633 (7th Cir. 2002) (State's failure to provide transcripts to petitioner who sought to file petition for post-conviction review was not an "impediment" to filing within

14

the meaning of § 2244(d)(1)); *Wood v. Spencer*, 487 F.3d 1, 7 (1st Cir. 2007) (concluding that when a petitioner had "the power to blunt the effect of any State-created impediment" with "garden-variety diligence" tolling under § 2244(d)(1)(B) is not appropriate).

First, prisoners do not enjoy a free-standing constitutional right to attend a prison law library. *Lewis*, 518 U.S. at 351 (1996); *Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991) ("[T]he Constitution does not guarantee a prisoner unlimited access to a law library. Prison officials must regulate the time, manner, and place in which library facilities are used."). Simply put, lockdowns by prison officials are not sufficient to establish a denial of "access to the courts" when they are done for penological interests, as Alston concedes the lockdowns were here. *See Lewis*, 518 U.S. at 361-62; *see also* ECF #20 at 2, Pet'r Supp'l Br. (explaining that the July 2010 lockdown was precipitated when "a correctional staff member was severely injured" during a standoff with inmates). The Supreme Court is clear that courts must give deference to prison authorities, and rejected the idea that inmate lockdowns necessarily meant they were denied access to the courts. *Id.* "[A] prison regulation impinging on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests." *Id.* at 361 (quotation omitted). With

15

regard to prisoners in lockdown, therefore, this "principle of deference has special force." *Id.* Alston clearly had no constitutional right to unfettered access to attend the law library during the lockdowns.

Second, although under some circumstances the lack of basic and essential legal materials, such as the AEDPA itself, from a prison law library may constitute an impediment within the meaning of the statute, *see Whalem/Hunt v. Early*, 233 F.3d 1146, 1148-49 (9th Cir. 2000), that is not the case here. As noted above, Alston's attorney notified him of the AEDPA statute of limitation and he had access to Supreme Court and Ninth Circuit case law in the law library before, during, and after the lockdowns upon written request.

Third, Alston fails to show a "causal connection" between his limited access to attend the law library and his failure to file a timely petition. *See Bryant*, 499 F.3d at 1060 (rejecting petitioner's argument that prison library's failure to provide case law interpreting § 2244(d)(1) was State-created impediment because petitioner admitted he was not even aware of statute of limitations before receiving respondent's answer to his federal petition). Moreover, Alston does not demonstrate that he made any effort to "blunt the effect" of the limitations on his access to the law library, *see Wood*, 787 F.3d at 7, or that he was unable to present his claims in *any* form, to *any*

court, *Ramirez*, 571 F.3d at 1001.

Neither Alston's inability to physically attend the law library during the 99 days that SCF was in lockdown in 2010, the lack of inmate or trained paralegal assistance, nor the alleged lack of pens, papers, envelopes, and stamps constituted State created impediments within the meaning of § 2244(d)(1)(B). Alston's conclusory and unsupported assertions do not persuade the Court that the limitation on his attendance at the prison law library actually prevented him from filing a timely federal habeas petition. *See Quintero v. Haws*, No. 07-CV-0579-H (POR), 2008 WL 553651, at *4 (S.D. Cal. Feb. 28, 2008) (granting respondent's motion to dismiss and denying petitioner's motion for evidentiary hearing because of lack of specificity in petitioner's claims that prison policies, lockdowns, and his job demands restricted his access to the law library and prevented him from filing timely habeas petition). Alston is not entitled to statutory tolling under § 2254(d)(1)(B).

//
//
//
//
//
//
//

## IV. CONCLUSION

The Petition is DISMISSED with prejudice as time-barred.  A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are DENIED because (1) dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and (2) Alston has not made a substantial showing of the denial of a constitutional right.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); Rule 11(a), Rules Governing § 2254 Proceedings.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 17, 2011.



/S/ Helen Gillmor

Helen Gillmor
United States District Judge

*Alston v.Thomas*, Civ. No. 11-00062 HG-BMK; Order Dismissing Petition as Time-barred and Denying Certificate of Appealability; psas\habeas\DMP\2011\sol\Alston 11-62 hg (sol no equit toll)